In re Thomas William SAINLAR and Sheryl A. Sainlar, Debtors.

No. 6:05–BK–14070–ABB.

United States Bankruptcy Court, M.D. Florida, Orlando Division.

March 21, 2006.

**670**

Robert H. Pflueger, Robert H. Pflueger PA, Altamonte Springs, FL, for Debtors.

---

*ORDER*

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on the Objection to Debtors' Claim of Exemption [1] ("Objection") filed by Bank One Kentucky, N.A. ("Bank One"). Bank One objects, pursuant to 11 U.S.C. § 522(p), to the homestead exemption claimed by Thomas William Sainlar and Sheryl A. Sainlar (collectively, the "Debtors"). An evidentiary hearing on the Objection was held on January 9, 2006 at which counsel for Bank One and counsel for the Debtors appeared. Bank One and the Debtors filed supporting legal memoranda.[2] An *amicas curiae* brief was filed by the National Association of Consumer Bankruptcy Attorneys in Opposition to Objection to Debtors' Homestead Exemption.[3] After reviewing the pleadings and evidence, hearing argument, and being otherwise fully advised in the premises, the Court finds that the Debtors' claim of exemption in their homestead is proper. The following Findings of Fact and Conclusions of Law are made:

*FINDINGS OF FACT*

There are no factual issues in dispute. The Debtors purchased a single family home located at 215 Acadia Terrace, Celebration, Florida 34747 (the "Property") on March 6, 2001 for the amount of $783,000. The Property is their homestead. The Debtors filed a joint Chapter 7 bankruptcy case on October 12, 2005 ("Petition Date"). The Debtors, on the Petition Date, owned the Property in excess of 1,215 days. The Debtors list the Property as an asset in Schedule A and claim the Property fully exempt in Schedule C pursuant to Florida

1. Doc. No. 12.

2. Doc. No. 18; Doc. No. 20.

3. Doc. No. 21.

state homestead exemption law.[4] They valued the Property at $809,400 in Schedule A and Schedule D reflects a secured claim encumbering the Property in the amount of $480,094 held by Citicorp Mortgage ("Citicorp").[5] Citicorp has not filed a proof of claim in this case.

The Debtors now believe the Property's value on the Petition Date was $1,400,000. The Property's value has increased by at least $617,000 since the purchase date and equity of at least $919,906 exists in the Property.[6]

Bank One, the Debtors' largest unsecured creditor, filed a $559,495.50 unsecured claim.[7] The claim arises from a pre-petition judgment obtained by Bank One against the Debtors and another defendant. Bank One contends the Debtors are limited to an exemption of no more than $125,000 in the Property and the creditors are entitled to the appreciation in value in excess of $125,000 pursuant to 11 U.S.C. § 522(p).

### CONCLUSIONS OF LAW

The sole issue for determination is the meaning of the word "interest" contained in the phrase "any amount of interest that was acquired by the debtor during the 1,215–day period" of 11 U.S.C. § 522(p)(1).[8] Does "interest" encompass any and all appreciation in a property's value during the 1,215–day pre-petition pe-

riod, regardless of when a debtor acquired title to the property? Does "interest" relate only to property a debtor acquired title to during the 1,215–day period? The Code does not define what specific interest a debtor must acquire in property during the 1,215–day period to fall within the ambit of § 522(p).

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPC-PA") was enacted on April 20, 2005.[9] The Debtors filed their bankruptcy case after the enactment date. The new law became generally effective on October 17, 2005, but certain provisions became effective upon enactment. Section 522(p)(1) became effective upon enactment of BAPCPA:

> (1) Except as provided in paragraph (2) of this subsection and sections 544 and 548, as a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215–day period preceding the date of the filing of the petition that exceeds in the aggregate $125,000 in value in—
>
> (A) real or personal property that the debtor or a dependent of the debtor uses as a residence;
>
> . . . .

11 U.S.C. § 522(p)(1) (2005).[10]

Section 522(d) of the Bankruptcy Code sets forth federal exemptions that

---

4. Doc. No. 1.

5. Doc. No. 1 (Schedules A and D).

6. A secured priority claim (Claim No. 2) in the amount of $39,520.40 was filed by the Kentucky Department of Revenue. It has not been determined yet whether this claim encumbers the Property and thereby needs to be included in an equity calculation. Even if this claim affects the Property, a substantial amount of equity exists.

7. Claim No. 1.

8. The Court does not address at this time whether § 522(p) is applicable to bankruptcy cases filed in Florida, an opt-out state, and leaves that issue for later determination.

9. Pub.L. No. 109–8, 119 Stat. 23 (2005).

10. 11 U.S.C. § 522(p)(1) was added to the Bankruptcy Code by § 322(a) of BAPCPA.

protect property of individual debtors. Exemption of property is fundamental to a debtor's fresh start. The federal exemptions are not available to debtors who commence cases in states that have "opted out" of the federal exemptions.[11] The majority of states, including Florida, have opted out of the federal exemptions and provide their own state law exemptions.[12] Debtors filing for bankruptcy protection in Florida are entitled to the Florida state law exemptions. The Florida exemptions include a homestead exemption available to qualifying debtors for protection of their Florida homesteads. The exemption provides:

(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:

(1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which shall not be reduced without the owner's consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner's family.

FLA. CONST. art. X, Section 4(a)(1). The Debtors claim the Property as fully exempt in Schedule C pursuant to the Flori-

da homestead exemption and Florida Statutes §§ 222.01, 222.02, and 222.05.

■ Bank One objects to their homestead exemption claim contending § 522(p) limits the Debtors' homestead exemption to $125,000. Bank One argues the phrase "any amount of interest acquired by the debtor during the 1215–day period" contained in § 522(p) encompasses the equity gained in the Property during the 1,215–day period preceding the Petition Date. The Debtors contend the phrase only applies to property a debtor purchases or acquires an interest in within 1,215 days of the petition date. The Debtors argue they did not acquire "any amount of interest" during the 1,215–day period, since they purchased the Property more than 1,215 days prior to filing for bankruptcy, and § 522(p) does not limit their homestead exemption.

Bank One's reading of § 522(p)(1) would have the statute encompass not only all property purchased or acquired by debtors within the 1,215–day period, but all property purchased prior to the 1,215–day period in which the equity value increased as a result of appreciation in the property's value and/or a decrease of secured debt (a consequence of payments reducing the principal balance of a mortgage). Bank One's reading of § 522(p)(1) is inconsistent with the plain language of the statute and the common definitions of its words.

■ The Supreme Court explained in *Helvering v. San Joaquin Fruit & Investment Co.*, 297 U.S. 496, 56 S.Ct. 569, 80 L.Ed. 824 (1936): "The word 'acquired' is not a term of art in the law of property but one in common use." The plain import of

---

**11.** 11 U.S.C. § 522(b) provides that states can prohibit their citizens from using the federal exemptions and limit them to applicable state law exemptions.

**12.** FLA. STAT. § 222.20 (1998); 4 COLLIER ON BANKRUPTCY ¶ 522.01, at 522–16 (Alan N. Resnick et al. eds., 15th ed. rev.2005).

the word is "obtained as one's own." [13] Black's Law Dictionary sets forth "acquire" means: "[t]o gain possession or control of; to get or obtain." [14] "Interest" is defined as "[a] legal share in something; all or part of a legal or equitable claim to or right in property." [15] Title to real property is acquired, equity is not. Equity is the difference between value and debt. It is not a constant, but fluctuates based upon market conditions and when mortgage principal is paid. A debtor who holds title to property obtained that property as the debtor's own. The debtor's interest in the property is his legal right in the property.

The phrase "interest that was acquired" as used in § 522(p)(1) means the acquisition of ownership of real property. Section 522(p), therefore, does not apply to property to which a debtor acquired title more than 1,215 days before a bankruptcy filing. The Debtors acquired an interest in the Property through their purchase of the Property in March 2001. The Debtors had owned the Property in excess of 1,215 days when they filed for bankruptcy protection. Section 522(p) does not apply to the Property. The Debtors' homestead is not subject to the $125,000 cap. The Debtors are entitled to fully exempt the Property pursuant to the Florida homestead exemption.

### Legislative History

An analysis of § 522(p)'s legislative history is not required because the statute is unambiguous. The legislative history makes it clear that "interest" in § 522(p) means acquisition of ownership of property within the 1,215–day period, even if one finds the plain language of § 522(p) ambiguous:

The bill also restricts the so-called "mansion loophole." Under current bankruptcy law, debtors living in certain states can shield from their creditors virtually all the equity in their homes. In light of this, some debtors actually relocated to these states just to take advantage of their "mansion loophole" laws. S.256 closes this loophole for abuse by requiring a debtor to be a domiciliary in the state for at least two years before he or she can claim that state's homestead exemption; the current requirement can be as little as 91 days. The bill further reduces this opportunity for abuse by requiring a debtor to own the homestead for at least 40 months before he or she can use state exemption law; current law imposes no such requirement.

H.R. REP. No. 109–31(Part I) (2005), *reprinted in* 2005 (June) U.S.C.C.A.N. 102. A footnote further explains:

If the debtor owns the homestead for less than 40 months, the provision imposes a $125,000 homestead cap. In effect, this provision overrides state exemption law authorizing a homestead exemption in excess of this amount and allows such law to control if it authorizes a homestead exemption in a lesser amount.

*Id.* at 102 n. 72. The House Report explains § 322(a) of BAPCPA (which is now § 522(p) of the Bankruptcy Code):

"[This § ] amends § 522 of the Bankruptcy Code to impose an aggregate monetary limitation of $125,000 ... on the value of property that the debtor may claim as exempt under State or local law pursuant to § 522(b)(3)(A) *under certain circumstances*. The mone-

**13.** *Helvering v. San Joaquin Fruit & Investment Co.*, 297 U.S. 496, 499, 56 S.Ct. 569, 80 L.Ed. 824 (1936).

**14.** *Black's Law Dictionary* 24 (7th ed.1999).

**15.** *Id.* at 816.

tary cap applies if the debtor *acquired* such property within the 1,215–day period preceding the filing of the petition . . . ."

*Id.* at 148 (emphasis added).

Both a reading of the plain, unambiguous language of § 522(p)(1) and the statute's legislative history lead to the same result: the monetary cap of § 522(p) is inapplicable to property purchased by a debtor more than 1,215 days before the petition date.

This conclusion is consistent with the rulings of other bankruptcy courts. The United States Bankruptcy Court for the Northern District of Texas, Dallas Division, held the increase in the value of the equity in the debtors' home was not subject to the $125,000 cap of § 522(p) because they purchased their home outside of the 1,215–day period. "The 'interest' the Debtors acquired was the actual purchase of the home, which was completed well before the 1215–day period." *In re Blair,* 334 B.R. 374, 377 (Bankr.N.D.Tex. 2005). The United States Bankruptcy Court for the District of Nevada, in two decisions jointly issued on October 31, 2005, sustained the trustee's objections to the debtors' homestead exemptions and limited the debtors' homestead exemptions to $125,000 because they "acquired their homes within the 1215 days before the filing . . . ." *In re Virissimo,* 332 B.R. 201, 207 (Bankr.D.Nev.2005).[16] The United States Bankruptcy Court for the District of Arizona held, "Code § 522(p), as added by BAPCPA, applies a $125,000 cap on a homestead if it was acquired by the debtor within 1215 days prepetition . . . ." *In re McNabb,* 326 B.R. 785, 788 (Bankr.D.Ariz. 2005).[17]

### Conclusion

The $125,000 exemption cap of 11 U.S.C. § 522(p) applies only to real property purchased or otherwise acquired by a debtor within 1,215 days of the petition date. The statute has no applicability to property in which a debtor obtained an ownership interest more than 1,215 days before the petition date, even if the property's equity increases during the 1,215–day pre-petition period. Section § 522(p) is not applicable to the Debtors' Property and does not limit their homestead exemption.

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that Bank One's Objection is hereby **OVERRULED;** and it is further

**ORDERED, ADJUDGED and DECREED** that the Debtors' homestead exemption claim is **ALLOWED** and their home located at 215 Acadia Terrace, Cele-

---

**16.** The case *In re Heisel* is contained within this decision. Both *In re Virissimo* and *In re Heisel* involve Chapter 7 debtors who had purchased their homesteads less than 1,215 days before the petition date and had equity of more than $125,000 in their homes. They claimed the properties as exempt pursuant to Nevada's homestead exemption (which allows a debtor to exempt $350,000 in a homestead) and the Chapter 7 Trustee objected to the exemptions. The Court's decision on the applicability of § 522(p)'s homestead exemption cap in opt-out states was certified for direct appeal to the Ninth Circuit Court of Appeals in *In re Virissimo,* 332 B.R. 208 (Bankr. D.Nev.2005).

**17.** *See also* 4 COLLIER ON BANKRUPTCY ¶ 522.13[2], at 522–102.4 (explaining "... section 522(p) should not apply to any amount of interest in the debtor's homestead that is acquired through no affirmative action of the debtor, such as an appreciation in the homestead's value resulting solely from changes in the real estate market during the 1215–day period. Similarly, this provision should not prevent the debtor from claiming as fully exempt any increase in the debtor's equity interest in a homestead attributable to the application of regularly scheduled mortgage payments during the 1215–day period.")

bration, Florida 34747 is exempt in its entirety.